In the Matter of the Judicial Settlement of the Accounts of FREDERICK C. IRVING, Executor, etc., of NINA F. IRVING, Deceased, Respondent.

ST. LAWRENCE TRUST COMPANY, Appellant.

Third Department, November 16, 1921.

Bills and notes — promissory notes valid where signature affixed by third person with authority of person whose name is signed — evidence — rule for weighing conflicting evidence — ratification by decedent of her indorsement on note — decedent's estate liable though renewal note was not signed by decedent or with her authority, where she signed original notes.

A person whose name appears on a promissory note as signer or indorser is liable thereon though she did not personally sign or indorse the note, if she understood the nature of the note and authorized a third person to sign her name as maker or indorser.

In weighing evidence it is a fundamental rule that all the evidence should be harmonized if possible and that each part thereof should be considered in reference to the entire testimony and so as to bring about a consistent result. If two constructions are equally suggestive, one of which implies crime or moral turpitude and the other is free from such implication, the latter should be adopted.

The appellant was the owner of two promissory notes, on one of which the decedent's name appeared as indorser and on the other as signer.

While expert witnesses testified that the name of the decedent was not in her handwriting it appeared by other evidence that the decedent was present at the appellant bank when her husband stated that the first note was indorsed by her. As to the other note, while there was no evidence that she signed it, there was evidence that she actually signed two other notes for which it was given in renewal.

*Held*, on all the evidence, that the decedent's estate is liable on both notes.

It is immaterial whether or not the decedent actually signed the second note as maker, since it appeared that she did sign notes for which it was given in renewal, and the claim by the appellant was amended on the hearing before the surrogate so as to cover either view of the transaction.

APPEAL by St. Lawrence Trust Company from a decree of the Surrogate's Court of the county of St. Lawrence, entered in the office of said Surrogate's Court on the 26th day of March, 1921, judicially settling the accounts of the executor of the last will and testament of Nina F. Irving, deceased, and disallowing the claim of the appellant against said executor.

*Robert E. Waterman* [*Robert S. Waterman* and *Edward W. Cregg* of counsel], for the appellant.

*George E. Van Kennen*, for the respondent.

COCHRANE, J.:

Nina F. Irving died October 31, 1918, leaving a last will and testament and codicil thereto whereby she appointed her son, Frederick C. Irving, the executor thereof. Andrew Irving was her husband. At the time of her death the St. Lawrence Trust Company owned two promissory notes both dated August 1, 1918, one for $5,000 made by Eastern Quebec Land and Lumber Company to the order of and purporting to have been indorsed by the decedent and her husband, Andrew Irving, and the other for $3,500, purporting to have been made by the decedent to the order of and indorsed by her husband, Andrew Irving. The $5,000 note was not acquired by the trust company until September 3, 1918. These two notes were presented to the executor for payment and by him rejected. After trial before the surrogate on a judicial settlement of the accounts of the executor the said notes were disallowed as valid claims against the estate of decedent on the ground that her purported signatures appearing on said notes were not genuine.

Much of the testimony at the trial and all of the testimony on the part of the respondent was given by expert witnesses on

Third Department, November, 1921.                [Vol. 198

the subject of handwriting. These witnesses on the part of the respondent had never seen Mrs. Irving nor had they any acquaintance with her handwriting but they were qualified to express an opinion in respect thereto and they testified that in their opinion she did not write her name on the notes in question. Expert witnesses for the appellant testified to the contrary. It is apparent that the learned surrogate based his decision mainly on this expert testimony. In doing so we think he overlooked the fact that the case does not necessarily turn on the question as to whether or not Mrs. Irving personally wrote her name on the notes. For the purposes of this discussion we shall assume that she did not do so. The expert testimony in itself and without reference to the other testimony presents a question of fact on that point. But it is clear that if Mrs. Irving understood the nature of these notes and authorized her husband or any other person to attach her name thereto, her estate is as liable as if she had personally written her name on the notes.

In weighing evidence it is a fundamental rule that all the evidence should be harmonized if possible and that each part thereof should be considered in reference to the entire testimony and so as to bring about a consistent result. And it is particularly important that such a construction be placed on the evidence if it is reasonably possible to do so as will avoid the imputation of crime to any person. If two constructions are equally suggestive one of which implies crime or moral turpitude and the other is free from such implication, the latter should by all means be adopted. Such we conceive to be the situation here. The decision we are reviewing not only implies that some one forged the decedent's name but also quite strongly suggests that some of the appellant's witnesses have deviated from the strict path of truthfulness. It is our duty to say whether we cannot so construe and reconcile the evidence as to avoid such a result.

Andrew Irving was a man prominent in the business and social life of the city where he resided. He had also been president of a bank and of various important civil departments of the city government. He had at different times negotiated to this trust company notes of the Eastern Quebec Land and Lumber Company, indorsed by himself. It is claimed that

such lumber company had no existence. If such be the fact we regard it as immaterial as bearing on the question with which we are now concerned. The trust company was not aware of such fact until after it took the notes and it is apparent that it relied on the responsibility and standing of the indorser. There came a time, however, when the trust company was not entirely satisfied with the responsibility of either the maker or indorser. That was on or about September 1, 1918, at which time two notes of the character indicated aggregating $4,500 matured. The president of the trust company, Mr. Stephens, testified that he then informed Mr. Irving that either a payment or strong indorsement would be required; that following such conversation and on September third, Mr. Irving and his wife together went to the trust company and presented the $5,000 note in question bearing the indorsement of both of them; that Mr. Irving said in the presence of his wife that such note had been indorsed by both of them and that he would like to have it accepted in renewal of the two notes aggregating $4,500 and to have the balance credited to his account; that he (Mr. Stephens) said in the presence of both of them that the note having Mrs. Irving's indorsement was acceptable and the note was thereupon accepted. He did not testify that she indorsed the note in his presence, but if his testimony is true it is immaterial whether she ever wrote her name on the note because whoever wrote it she ratified the signature and adopted it as her own.

The history of the $3,500 note is as follows: On December 1, 1917, there appeared in the trust company a note for $2,600 made by Mrs. Irving to the order of and indorsed by her husband. That was the first note bearing her signature accepted by the trust company. This note matured May 1, 1918, on which day the trust company accepted two notes purporting to have been made by Mrs. Irving to the order of and indorsed by her husband for $2,500 and $1,000, respectively. These two notes included and extinguished the $2,600 note which matured on that day. The two notes matured August 1, 1918, and on that day the trust company accepted in the place thereof the note in question for $3,500 made by Mrs. Irving to the order of and indorsed by her

husband. As in the case of the $5,000 note, no witness testifies to having seen her execute this note. Mr. Stephens, the president, testifies, however, that on two different occasions in his presence at the trust company she signed notes in connection with this series of notes culminating in the $3,500 note. If her name on the $3,500 note was not signed by her such fact does not relieve her estate from responsibility. Her name on the $5,000 note was not made but was authorized by her. That fact, in connection with the testimony of Mr. Stephens that she did on two different occasions sign notes which culminated in the $3,500 note strongly suggests that she also authorized the signature of her name on the latter note. But whether she did or not is immaterial. If the testimony of Mr. Stephens is true and if she did not sign the $3,500 note she must have personally signed the two notes aggregating $3,500 maturing August 1, 1918, and to renew which the note in question was given. Her estate would, therefore, be liable on these two notes maturing August 1, 1918, irrespective of the renewal note in question given on that day if the latter note was spurious. The claim was amended on the hearing before the surrogate so as to cover either view of the transaction.

There is nothing inconsistent or improbable in the testimony of the president of the trust company. On the contrary, subjected to careful analysis it bears inherent evidence of probability. Were it a fabrication it would in all likelihood be different in some respects. He does not testify as a fact that Mrs. Irving personally signed either the $5,000 or $3,500 note but his testimony makes her estate liable for the amount of both notes. His testimony as to the facts is not in conflict with the expert testimony on handwriting nor with any other evidence in the case. He is not discredited unless it be because as an officer of the trust company he is interested. Furthermore he is corroborated. Witnesses testified to having seen Mrs. Irving in the office of the president at the trust company. It was established that she never had any business transaction there unless it may have been in connection with the notes in question. She kept her bank account in another institution. A careful analysis of the evidence produces the conviction that it is such as to require us to find that even assuming as claimed

by the respondent that his mother's signatures were not written by her, she nevertheless authorized them and that he should pay the notes as claims against her estate.

The decree should be modified by directing payment of the claims of the appellant and by eliminating the costs awarded against it, and as so modified affirmed, with costs in its favor payable out of the estate. This court finds all the facts as contained in the appellant's requests for such findings as submitted by it to the surrogate and disapproves the refusal by him to find such facts as he refused to find.

Present — JOHN M. KELLOGG, P. J., COCHRANE, H. T. KELLOGG, KILEY and VAN KIRK, JJ.

Decree modified by directing payment of the claims of the appellant and by eliminating the costs awarded against it, and as so modified unanimously affirmed, with costs in its favor payable out of the estate. This court finds all the facts as contained in the appellant's requests for such findings as submitted by it to the surrogate, and disapproves of the refusal by him to find such facts as he refused to find.